1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                           EASTERN DISTRICT OF CALIFORNIA

10

11    BENJAMIN HENDRIX,                        Case No. 1:20-cv-01307-AWI-CDB (PC)

12                      Plaintiff,
                                               **FINDINGS AND RECOMMENDATION TO**
13          v.                                 **GRANT DEFENDANT'S MOTION FOR**
                                               **SUMMARY JUDGMENT FOR A FAILURE**
14    ARCE,                                     **TO EXHAUST ADMINISTRATIVE**
                                               **REMEDIES**
15                      Defendant.
                                               (Doc. 48)
16

17          Plaintiff Benjamin Hendrix is proceeding *pro se* and *in forma pauperis* in this civil rights

18    action filed pursuant to 42 U.S.C. § 1983. This action proceeds on a claim of deliberate

19    indifference to serious medical needs against Defendant Arce.

20          **I.       RELEVANT PROCEDURAL BACKGROUND**

21          Plaintiff filed his original complaint on July 22, 2020 (Doc. 1) and a first amended

22    complaint on September 3, 2020 (Doc. 13). Plaintiff lodged a second amended complaint on

23    November 18, 2020. (Doc. 17.)[1]

24          On June 4, 2021, then-Magistrate Judge Jennifer L. Thurston issued an Order Directing

25    Plaintiff to File a Third Amended Complaint or Notify the Court of His Desire to Proceed Only

26    on Claim Found Cognizable. (Doc. 21.) Specifically, the Court found Plaintiff's second amended

27    complaint stated a cognizable deliberate indifference to serious medical needs claim against

28    _____
      [1] Plaintiff's second amended complaint was filed on June 4, 2021. (Doc. 21.)

1    Defendant Arce but failed to state a cognizable claim against Warden Santoro. (*Id*. at 5-6.)

2    Plaintiff was given leave to file a third amended complaint, or, alternatively, to notify the Court if

3    he wished to proceed only on the claim found cognizable against Defendant Arce. (*Id*. at 6-7.)

4         On June 24, 2021, Plaintiff filed notice that he wished to proceed only on the cognizable

5    claim. (Doc. 22.) That same date, the Court issued Findings and Recommendations to Dismiss

6    Defendant Santoro. (Doc. 25.) District Judge Anthony W. Ishii issued an Order adopting the

7    findings and dismissing Santoro on August 11, 2021. (Doc. 30.)

8         Following service, Defendant Arce answered Plaintiff's second amended complaint on

9    August 23, 2021. (Doc. 32.)

10        A Discovery and Scheduling Order issued on November 1, 2021. (Doc. 42.) Ultimately,

11   the Order was modified on two occasions (Doc. 45 & 47), the last of which extended the deadline

12   for filing motions challenging the exhaustion of administrative remedies to April 29, 2022. (Doc.

13   47 at 2.)

14        On April 29, 2022, Defendant filed a motion for summary judgment asserting Plaintiff

15   failed to properly exhaust an administrative remedy. (Doc. 48.) Plaintiff opposed (Doc. 51) and

16   Defendant replied (Docs. 52 & 53).

17        On May 11, 2022, the Court issued an Order Granting Defendant's Motion to Stay,

18   staying merits-based discovery, except for Defendant's responses to Plaintiff's previously

19   propounded written discovery, pending resolution of the instant motion. (Doc. 50.)

20        On June 27, 2022, Plaintiff filed a Motion to Compel Answers to Interrogatories (Doc. 54)

21   and a Motion to Compel Request for Production of Documents Set One (Doc. 55). Defendant

22   opposed both motions. (Doc. 56-57.) Defendant asked the Court to refrain from ruling on the

23   motions to compel until after it had decided the instant motion. (Doc. 56 at 2; Doc. 57 at 1-2.)

24        On October 6, 2022, this matter was reassigned to the undersigned as magistrate judge.

25   (Doc. 58.)

26   //

27   //

28   //

2

## II.   SUMMARY OF FACTS

### A.  Plaintiff's Allegations

Plaintiff's claim stems from events at North Kern State Prison. (*See* Doc. 17 at 2.) In August 2017, Captain Arce "transferred plaintiff from A-yard to D-yard." (*Id.* at 3.) Prior to the transfer, Plaintiff informed Arce that he opposed the transfer "due to his ailing physical condition associated with pulmonary hypertension, hyperlipidemia, chronic kidney disease, hepatitis C, liver cirrhosis, . . . [and his] age of 64." (*Id.*) Plaintiff explained that he feared contracting Valley Fever because of the "major construction" being undertaken on D-yard. (*Id.*) Arce replied that since Plaintiff had not contracted the disease after being at the prison for several years, he had "nothing to worry about." (*Id.*) Plaintiff contracted Valley Fever within two months of being transferred. (*Id.*) He "became very sick, . . . suffering from constant coughing, malaise, fever, chills, night sweats, . . . weakness," loss of appetite, and weight loss. (*Id.*) Plaintiff alleges that Arce "was notified of his ailing physical condition and construction on the receiving yard, which made [Plaintiff] vulnerable to valley fever, but disregarded it" by transferring him to that yard. (*Id.* at 5-6.)

### B.  Defendant's Statement of Undisputed Facts

Defendant submitted the following Statement of Undisputed Facts:

1.  At all relevant times, Plaintiff Hendrix was incarcerated at North Kern State Prison (NKSP);

2.  At all relevant times, Defendant Arce was a captain at NKSP;

3.  Hendrix alleges that, in August 2017, Arce transferred him from A-Yard to D-Yard but, before the transfer, Hendrix refused and informed Arce that due to his ailing physical condition he was in fear of contracting Valley Fever and was aware that major construction was occurring on D-Yard;

4.  Arce allegedly stated that because Hendrix hadn't contracted Valley Fever despite his years at NKSP, Hendrix had nothing to worry about;

5.  Within two months of Hendrix's transfer to D-Yard, he contracted Valley Fever, suffered from various maladies, and allegedly almost died;

6. Since August 1, 2008, the Office of Appeals (OOA) receives, reviews, and maintains all non-health care related offender grievances;

7. When an appeal is received by the OOA it is assigned a tracking number and enter[ed] into a computer system which was commenced in 1993. An "Appeal History Report" is available in the computer system for each offender and the reports include the offender's name, the offender's CDCR number, the appeal log number, the appeal issue, the date the appeal was received, the underlying grievance log number (which includes the acronym of the institution or parole region where the underlying grievance arose), the date the appeal is closed, and the final disposition of the appeal;

8. Decisions by the OOA represent the final level of review in the Department of Corrections and Rehabilitation's grievance and appeal process and are rendered on behalf of the Secretary of the Department;

9. If filing a grievance before June 1, 2020, the offender was required to follow the procedures set forth in the California Code of Regulations (CCR), title 15, sections 3084-3085 and if filing a grievance on or after June 1, 2020 an offender is required to follow the procedures set forth in CCR title 15, sections 3480-3487;

10. Howard E. Mosely, Associate Director of the OOA, is familiar with the record system at the OOA and has access to Plaintiff Hendrix's records.  The OOA's records of appeals are maintained in the course of the regularly conducted activities of the OOA, and making the records is a regular practice of those activities;

11. On April 20, 2022, a search of the OOA computer system was conducted under the name Benjamin Hendrix, CDCR No. C38197, for all non-health [care] related appeals. An Appeal History Report was created for grievances filed by Hendrix before June 1, 2020, and an Appeal History Report was created for grievances filed by Hendrix after June 1, 2020;

12. A review of the OOA computer system and the Appeals History Reports for grievances filed by Plaintiff Hendrix before June 1, 2020 and after June 1, 2020 shows that no appeals by Plaintiff were received by the OOA after June 1, 2017. In other

4

words, the OOA did not receive any appeals from Plaintiff Hendrix during the relevant time period, between June 1, 2017 and June 4, 2021, containing the allegations that Plaintiff Hendrix informed Defendant Arce that Plaintiff had medical conditions and was susceptible to contracting Valley Fever, but Defendant Arce disregarded those risks and transferred Plaintiff to D-Yard at North Kern State Prison in August 2017 where Plaintiff contracted Valley Fever;

13. Since August 1, 2008, health care appeals/grievances involving inmate medical, dental, and mental health services have been processed by California Correctional Health Care Services (CCHCS). The Health Care Correspondence and Appeals Branch (HCCAB) receives, reviews, and maintains all health care appeals/grievances accepted for the final (headquarters) level of review in the inmate health care appeal/grievance process, and renders decisions on such appeals/grievances;

14. All levels of health care appeals/grievances, including the institutional and headquarters levels of review, are tracked through a computer database known as the Health Care Appeals and Risk Tracking System (HCARTS). HCARTS also tracks health care appeals/grievances that were received and ultimately rejected and the reason for the rejection. The HCARTS is kept as a regularly conducted activity, and the computer entries are made at or near the time of the occurrence by the employee who is processing the health care appeal/grievance;

15. Before September 1, 2017, health care appeals were governed by sections 3084-3086 of the California Code of Regulations, which govern the inmate appeal process. Under that process, health care appeals were subject to three levels of review before the administrative remedies were deemed exhausted;

16. New procedures were officially enacted as regulations under Cal. Code Regs. Tit. 15, § 3087 on September 1, 2017; however, in 2019, the health care grievances section was changed without regulatory effect at Title 15, §§ 3999.225-3999.237 of the California Code of Regulations. Under these regulations, inmates may grieve complaints regarding health care policies, decisions, actions, conditions, or omissions

5

1   using a CDCR 602 HC form. Such complaints are subject to two levels of review, an

2   institutional level review, and a headquarters level review. Health care grievances are

3   subject to a headquarters' disposition before administrative remedies are deemed

4   exhausted;

5   17. K. Martin is currently employed by CCHCS in the Policy and Risk Management

6   Services (PRMS) division as the Acting Chief of the HCCAB. The HCCAB is the part

7   of the CCHCS that provides oversight of medical, dental, and mental health

8   appeals/grievances for adult inmates in the CDCR. Martin's duties include the

9   oversight of CDCR staff who process health care appeals/grievances submitted by

10   adult inmates regarding medical, dental and mental health care services. Martin is

11   familiar with the record keeping system at HCCAB, and is able to verify the status of a

12   California inmate's health care appeal/grievance at the headquarters level as well as an

13   inmate's health care appeal/grievance history with CCHCS;

14   18. Martin's office conducted a review of the inmate health care appeals/grievance records

15   in HCARTS database for inmate Benjamin Hendrix, CDCR No. C38197. Martin

16   reviewed Hendrix's appeal/grievance history based upon this review;

17   19. A thorough search of the records that are kept in ordinary course of business revealed

18   that Plaintiff Benjamin Hendrix, CDCR No. C38197, submitted a health care

19   grievance SOL HC 17000163 to the Institutional Level on November 7, 2017. In this

20   health care grievance, Plaintiff Hendrix alleged that medical staff knew that he would

21   be at high risk due to his age, race, and medical conditions for contracting Valley

22   Fever at North Kern State Prison. Plaintiff Hendrix alleged that he was diagnosed with

23   pneumonia at North Kern State Prison, but upon being transferred to California State

24   Prison—Solano he was diagnosed with Valley Fever on October 24, 2017. Plaintiff

25   Hendrix alleged that he was suffering from various medical issues due to Valley

26   Fever. The health care grievance did not contain any allegations regarding, or even

27   name, Defendant C. Arce and did not contain any allegations regarding a transfer of

28   Plaintiff Hendrix within North Kern State Prison. The disposition of this health care

grievance at the institutional level was "no intervention." On January 21, 2018, Plaintiff Hendrix submitted this health care grievance to the headquarters' level. At the next level, Plaintiff Hendrix reiterated his allegations and further alleged a doctor knew that he would be at risk of contracting Valley Fever upon being transferred from High Desert State Prison to North Kern State Prison and that "medical staff" knew that he was at high risk of contracting Valley Fever. Plaintiff Hendrix did not make any allegations regarding Defendant C. Arce in this portion of the health care grievance. The headquarters' level of review disposition was "no intervention" noting that Plaintiff Hendrix was provided care, did not provide documentation substantiating his claims of negligent care, and did not meet the exclusion criteria for being transferred to North Kern State Prison;

20. A thorough search of the records that are kept in ordinary course of business revealed that Plaintiff Benjamin Hendrix, CDCR No. C38197, submitted health care grievance SOL HC 17000105 to the institutional level on September 28, 2017. The action requested in that health care grievance was to be seen by medical staff regarding a cold. This health care grievance did not contain any allegations regarding Defendant C. Arce. The health care grievance was rejected at the institutional level for "anticipated action" on September 28, 2017, and it was noted that Plaintiff had an appointment with a Registered Nurse for the same concerns scheduled on September 29, 2017;

21. A thorough search of the records that are kept in ordinary course of business revealed that Plaintiff Benjamin Hendrix, CDCR No. C38197, submitted health care grievance SOL HC 20000256 to the institutional level on May 13, 2020. Here, Plaintiff requested to review his health care records, known as an Olsen Review, in regards to his contraction of Valley Fever allegedly at North Kern State Prison and the identities of certain medical staff at that facility. The disposition of this health care grievance at the institutional level was no intervention. The health care grievance was closed on July 15, 2020, and records were mailed to Plaintiff Hendrix. This health care

1   grievance did not contain any allegations regarding Defendant C. Arce. Plaintiff

2   Hendrix did not continue processing this health care grievance for a headquarters'

3   level review; therefore, administrative remedies were not exhausted.

4   (Doc. 48-3.)

5   **III.   LEGAL STANDARDS**

6   **A.  Summary Judgment**

7   Summary judgment is appropriate when the moving party "shows that there is no genuine

8   dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

9   Civ. P. 56(a). The moving party "initially bears the burden of proving the absence of a genuine

10  issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing

11  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by

12  "citing to particular parts of materials in the record, including depositions, documents,

13  electronically stored information, affidavits or declarations, stipulations …, admissions,

14  interrogatory answers, or other materials," or by showing that such materials "do not establish the

15  absence or presence of a genuine dispute, or that an adverse party cannot produce admissible

16  evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears

17  the burden of proof at trial, "the moving party need only prove that there is an absence of

18  evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*,

19  477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B).

20  Summary judgment should be entered against a party who fails to make a showing

21  sufficient to establish the existence of an element essential to that party's case, and on which that

22  party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of

23  proof concerning an essential element of the nonmoving party's case necessarily renders all other

24  facts immaterial." *Id.* at 322–23. In such a circumstance, summary judgment should be granted,

25  "so long as whatever is before the district court demonstrates that the standard for the entry of

26  summary judgment … is satisfied." *Id.* at 323.

27  //

28  //

### B. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is mandatory and "unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007); *Rhodes v. Robinson*, 621 F.3d 1002, 1005 (9th Cir. 2010) ("[A] prisoner must exhaust his administrative remedies for the claims contained within his complaint before that complaint is tendered to the district court"). The Ninth Circuit has "made clear that '[e]xhaustion requirements apply based on when a plaintiff files the operative complaint, in accordance with the Federal Rules of Civil Procedure." *Saddozai v. Davis*, 35 F.4th 705, 708 (9th Cir. 2022) (quoting *Jackson v. Fong*, 870 F.3d 928, 935 (9th Cir. 2017)). The exhaustion requirement applies to all inmate suits relating to prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002), regardless of the relief sought by the prisoner or offered by the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

Under the PLRA, exhaustion is "mandatory" and requires the prisoner to complete the administrative review process in "compliance with deadlines and other critical procedural rules, with no exceptions for special circumstances." *Ramirez v. Collier*, 594 U.S. —, 142 S. Ct. 1264, 1275, 212 L. Ed. 2d 262, (2022) (internal quotation marks omitted) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006); *Ross v. Blake*, 578 U.S. 632, 635 (2016)). The rules that must be followed, the level of detail necessary in a grievance, and the boundaries of proper exhaustion are defined by the prison's grievance procedures and not the PLRA. *Eaton v. Blewett*, 50 F.4th 1240, 1245 (9th Cir. 2022).

An untimely or otherwise procedurally defective appeal will not satisfy the exhaustion requirement. *Woodford*, 548 U.S. at 90. However, a grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved. *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009). A grievance also need not contain every fact necessary to prove each element of an eventual legal claim. *Jones*, 549 U.S. at 204. "[A]

1   grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought."

2   *Reyes v. Smith*, 810 F.3d 654, 659 (9th Cir. 2016) (quoting *Sapp v. Kimbrell*, 623 F.3d 813, 824

3   (9th Cir. 2010)). The exhaustion requirement affords prison officials an opportunity to resolve

4   disputes before the filing of a court action against them. *Jones*, 549 U.S. at 204. The failure to

5   exhaust administrative remedies is an affirmative defense that the defendant must plead and

6   prove. *Id.* at 204, 216. The defendant bears the burden of producing evidence that proves a failure

7   to exhaust. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014). On a motion for summary

8   judgment, the defendant bears the initial burden of proving (1) the existence of an available

9   administrative remedy, and (2) the plaintiff failed to exhaust that remedy. *Id.* at 1172. If the

10  defendant makes this showing, the burden shifts to the prisoner to present "evidence showing that

11  there is something in his particular case that made the existing and generally available

12  administrative remedies effectively unavailable to him." *Id.* (citing *Hilao v. Estate of Marcos*, 103

13  F.3d 767, 778 n.5 (9th Cir. 1996)).

14       A remedy is available if it "capable of use for the accomplishment of a purpose" or "is

15  accessible or may be obtained." *Eaton*, 50 F.4th at 1245 (quoting *Ross*, 578 U.S. at 642). The

16  Supreme Court has recognized three circumstances in which administrative remedies are

17  effectively unavailable: (1) when the grievance system "operates as a simple dead end—with

18  officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when the

19  system is "so opaque that it becomes, practically speaking, incapable of use"; and (3) "when

20  prison administrators thwart inmates from taking advantage of a grievance process through

21  machination, misrepresentation, or intimidation." *Id.* (quoting *Ross*, 578 U.S. at 643–44). The

22  Ninth Circuit has found administrative remedies effectively unavailable in several other

23  circumstances. *Id.* (citing *Fordley v. Lizarraga*, 18 F.4th 344, 358 (9th Cir. 2021) (holding that a

24  prison's failure to respond to an emergency grievance for several months in contravention of its

25  own deadlines rendered administrative remedies unavailable); *Sapp*, 623 F.3d at 823 (holding that

26  a prison's improper screening of a grievance renders administrative remedies effectively

27  unavailable); *Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010) (holding that an inmate was

28  excused from the exhaustion requirement where the inmate was unable to access a policy

1  necessary to bring a timely administrative appeal); *Albino*, 747 F.3d at 1177 (holding that an

2  inmate is excused from failure to exhaust where he was unable to access information about the

3  administrative grievance process); *Marella v. Terhune*, 568 F.3d 1024, 1026 (9th Cir. 2009)

4  (holding that an inmate is excused from non-exhaustion of administrative remedies where he is

5  unable to obtain the form necessary to submit a grievance)). If the court finds that remedies were

6  not available, the prisoner exhausted available remedies, or the failure to exhaust available

7  remedies should be excused, the motion for summary judgment is denied and the case proceeds to

8  the merits. *Albino*, 747 F.3d at 1171. "If undisputed evidence viewed in the light most favorable

9  to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under

10  Rule 56." *Id.* at 1172. When the district court concludes that the prisoner has not exhausted

11  administrative remedies on a claim, the proper remedy is dismissal without prejudice of the

12  portions of the complaint barred by section 1997e(a). *Jones*, 549 U.S. at 223–24; *Lira v. Herrera*,

13  427 F.3d 1164, 1175–76 (9th Cir. 2005).

14  ## C.  CDCR Grievance Process

15  The CDCR has an administrative grievance system for prisoners to appeal a policy,

16  decision, action, condition, or omission by the department or staff if it has an adverse effect on

17  prisoner health, safety, or welfare. Cal. Code Regs. tit. 15, § 3084.1(a) (2017). Compliance with

18  42 U.S.C. § 1997e(a) requires California state prisoners to use CDCR's grievance process to

19  exhaust their claims prior to bringing suit in court. *See Sapp*, 623 F.3d at 818; *see also Woodford*,

20  548 U.S. at 85-86 (characterizing a prisoner's obligation to comply with § 3084 as "mandatory").

21  In 2017, administrative grievances were subject to three levels of review before the remedy was

22  deemed exhausted. Cal. Code Regs. tit. 15, § 3084.1(b) (2017); *see also Sapp*, 623 F.3d at 818.

23  Health care grievances concern heath care policies, decisions, actions, conditions, or

24  omissions and are processed by California Correctional Health Care Services (CCHCS). (Martin

25  Decl., ¶ 3.) The Health Care Correspondence and Appeals Branch (HCCAB) provides oversight

26  of medical, dental, and mental health care appeals/grievances submitted by adult inmates

27  regarding medical, dental, and mental health care services. (*Id*. at ¶¶ 1, 5.) All health care

28  grievances are tracked through the Health Care Appeals and Risk Tracking System (HCARTS).

1    (*Id.* at ¶ 4.) Prior to September 1, 2017, health care grievances were subject to three levels of

2    review. (*Id.* at ¶ 6.) Health care grievances are now subject to two levels of review: an

3    institutional level of review and a headquarters level of review. (*Id.* at ¶ 7.) Health care grievances

4    are subject to a headquarters' disposition before administrative remedies are deemed exhausted.

5    (*Id.*)

6    ## IV.   EVIDENTIARY MATTERS

7         Plaintiff has not complied with Local Rule 260(b) because he failed to reproduce

8    Defendant's Statement of Undisputed Facts and to admit or deny those facts.

9         This Court's Local Rule 260(b) provides, in pertinent part:

10            **Opposition**. Any party opposing a motion for summary judgment or
      summary adjudication shall reproduce the itemized facts in the
11            Statement of Undisputed Facts and admit those facts that are
      undisputed and deny those that are disputed, including with each
12            denial a citation to the particular portions of any pleading, affidavit,
      deposition, interrogatory answer, admission, or other document
13            relied upon in support of that denial. The opposing party may also
      file a concise "Statement of Disputed Facts," and the source thereof
14            in the record, of all additional material facts as to which there is a
      genuine issue precluding summary judgment or adjudication. The
15            opposing party shall be responsible for the filing of all evidentiary
      documents cited in the opposing papers. See L.R. 133(j).

16

17   (*See also* Doc. 48-2 [Defendant's *Rand* Warning to Plaintiff Regarding Opposing Summary

18   Judgment].) Here, because Plaintiff has not complied with Rule 260(b) by reproducing

19   Defendant's itemized facts and admitting or denying them, the Court deems Plaintiff to have

20   admitted those facts not disputed by his complaint or other submissions. *See, e.g.*, *Beard v. Banks*,

21   548 U.S. 521, 527 (2006) ("by failing specifically to challenge the facts identified in the

22   defendant's statement of undisputed facts, [plaintiff] is deemed to have admitted the validity of

23   the facts contained in the [defendant's] statement."); *Brito v. Barr*, No. 2:18-cv-00097-KJM-DB,

24   2020 WL 4003824, at *6 (E.D. Cal. July 15, 2020) (deeming defendant's undisputed facts as

25   admitted after plaintiff failed to comply with Local Rule 260(b)).

26        Liberally construing Plaintiff's opposition to Defendant's motion, the Court interprets

27   Plaintiff's "THE FACTS" section to be Plaintiff's separate statement of disputed facts—

28   "The opposing party may also file a concise 'Statement of Disputed Facts,' and the source thereof

1   in the record, of all additional materials as to which there is a genuine issue precluding summary

2   judgment or adjudication," *see* Local Rule 260(b)—and will address them where supported and

3   appropriate.

4         **V.    DISCUSSION**

5             *A.  The Parties' Positions*

6         Defendant contends Plaintiff has failed to exhaust his administrative remedies because he

7   (1) failed to file any non-health care related grievances regarding the allegations of the complaint

8   and failed to name Defendant Arce or attribute any conduct to him, and (2) failed to file any

9   health care related grievances naming Defendant Arce or attributing any conduct to him. (Doc.

10   48-1 at 10, 14-15.)

11         Plaintiff opposes Defendant's motion, arguing Defendant's argument is "patently

12   [frivolous], since there is no requirement that a notice of claim contain every legal theory upon

13   which a cause of action is based. It is a short and concise statement of facts which is intended to

14   give the municipal defendant actual notice of an impending lawsuit." (Doc. 51 at 2.)  Plaintiff

15   asserts "all the basic elements of the claim for Deliberate Indifference have been established and

16   proven by the facts in the instant case." (*Id.*) He contends those facts reveal he was deliberately

17   and intentionally transferred to NKSP's D-Yard "where valley fever was highly contractable,

18   with prior knowledge that plaintiff suffered from serious medical conditions," and that Defendant

19   Arce "was responsible for these actions which caused plaintiff to almost die …." (*Id.*) Plaintiff

20   contends "the Court should grant plaintiffs' Opposition, and proceed Litigations [*sic*]." (*Id.*)

21         In reply, Defendant argues administrative remedies were available to Plaintiff despite

22   Plaintiff's "alleged impediments" in the form of Plaintiff's TABE Test Score as evidenced by

23   Plaintiff's use of the grievance process and multiple court filings. (Doc. 52 at 2-3.) Defendant

24   argues Plaintiff's "alleged mental function capacity does not excuse him from the PLRA's

25   exhaustion requirements." (*Id.*) Defendant further contends Plaintiff failed to exhaust his

26   administrative remedies because he is required to do so by the PLRA before filing suit and did not

27   do so, arguing whether Plaintiff properly alleged a claim is immaterial, because Plaintiff "was

28   unquestionably required to identify Defendant and Defendant's conduct in the underlying

grievances." (*Id*. at 4.) Plaintiff's non-medical grievances did not exhaust his claim because the applicable regulations require a plaintiff "to name all the staff members involved and describe how they allegedly violated" a plaintiff's rights. Because Plaintiff did not submit any non-medical grievances to the OOA either before or after June 1, 2020 alleging Defendant Arce disregarded the risk Valley Fever posed to Plaintiff and transferred Plaintiff in August 2017 where he contracted the disease, Plaintiff has failed to exhaust his administrative remedies. (*Id.* at 4-5.) Defendant additionally argues Plaintiff provides no evidence to contradict Defendant's undisputed facts, nor does Plaintiff reference any non-medical grievances in his opposition. (*Id*. at 5.) Finally, Defendant contends Plaintiff did not exhaust his medical grievances because those medical grievances did not identify Defendant Arce, by name or by conduct. (*Id*. at 5-6.)

### B. Analysis

The question before this Court is whether Plaintiff exhausted his administrative remedies, as required, prior to filing suit. *Jones*, 549 at 211; *Woodford*, 548 U.S. at 88, 93. If Plaintiff failed to exhaust his administrative remedies or fails to show those remedies were unavailable to him, Defendant is entitled to summary judgment. *Albino*, 747 F.3d at 1166; *Ross*, 578 U.S. at 642.

### 1.  Non-Medical Grievances

Defendant has met his initial burden of proving the existence of an available administrative remedy and that Plaintiff failed to exhaust that remedy. *Albino*, 747 F.3d at 1166. 56(a). Specifically, Defendant has established through evidence in the form of documentation and declaration that despite the availability of the CDCR's administrative remedy, Plaintiff did not submit any non-medical grievances to the OOA concerning his transfer from A-Yard to D-Yard in August 2017. (Doc. 48-3 [UDF] at Fact ¶¶ 7-12; Doc. 48-4 [Moseley Decl.] at ¶¶ 2-9; Doc. 48-5 [Moseley Exhibits].)  Therefore, the burden shifts to Plaintiff to present "evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172.

Plaintiff has not provided any evidence to show he submitted a non-medical grievance concerning his transfer from A-Yard to D-Yard. Nor has Plaintiff established there is something in particular about his case that made the CDCR's administrative remedies unavailable to him.

1    While Plaintiff has provided a copy of his Standardized Test Score, reflecting a reading

2    subtest score of 02.0 (*see* Doc. 51 at 38), this documentation does not amount to evidence

3    establishing administrative remedies were unavailable to Plaintiff. "To be available, a remedy

4    must be available 'as a practical matter'; it must be 'capable of use; at hand.'" *Albino*, 747 F.3d at

5    1171 (quoting *Brown v. Valoff*, 422 F.3d 926, 936–37 (9th Cir.2005)). Plaintiff's low reading

6    level does not make the CDCR's administrative remedy unavailable as a practical matter; it

7    remains "capable of use" and "at hand" despite Plaintiff's educational deficit.

8    Plaintiff has not established the CDCR's grievance system "operates as a simple dead

9    end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates,"

10   or that it is "so opaque that it becomes, practically speaking, incapable of use," nor has he

11   established that CDCR administrators "thwart inmates from taking advantage of a grievance

12   process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643-44.

13   Here too, there is no assertion, nor any evidence, that Plaintiff was unaware of the prison's

14   administrative grievance procedure, or that any prison official erred in the interpretation of any

15   regulation in deciding the administrative appeals, or any threat of retaliation. *Nunez*, 591 F.3d at

16   1226; *Sapp*, 623 F.3d at 823; *Albino*, 747 F.3d at 1177; *McBride v. Lopez*, 807 F.3d 982, 987 (9th

17   Cir. 2015) ("the threat of retaliation for reporting an incident can render the prison grievance

18   process effectively unavailable.").

19   In sum, Plaintiff has not met his burden of production.

20                              **2.   Medical Grievances**

21   Defendant has met his initial burden of proving the existence of an available

22   administrative remedy and that Plaintiff failed to exhaust that remedy. *Albino*, 747 F.3d at 1166.

23   56(a). Defendant has established through evidence in the form of documentation and declaration

24   that despite the availability of the CDCR's administrative remedy, Plaintiff did not submit any

25   medical grievances containing any allegations regarding or naming Defendant Arce. Plaintiff

26   submitted health care grievances HC 17000163, HC 17000105, and HC 20000256 during the

27   relevant period.

28   More particularly, HC 17000163 states "CDC" exposed Plaintiff, an "elderly Black Male

Age 64 Years" and thus at higher risk, by "purposely" transferring him from "H.D.S.P. to N.K.S.P." (Doc. 48-7 at 12-13.) Plaintiff states "CDC" and a "doctor" and "medical staff" knew of the risks posed to Plaintiff. (*Id*.) Plaintiff indicates he was told by the doctor at "CSP Solano" on October 24, 2017, that he had Valley Fever and has "been continuously coughing sweating at night," and has not been provided any medication to treat his pain and suffering. (*Id*. at 14.) He states he needs to get the problem taken care of immediately and wrote "(deliberate indifferent)" in conclusion. (*Id*.) Next, HC 17000105 states Plaintiff has been denied medical attention for a "cold [that] is getting worse and worse," despite Plaintiff having submitted a medical sick call slip. (*Id*. at 29.) Plaintiff wanted to see a doctor or nurse as soon as possible. (*Id*.) Lastly, in HC 20000256, Plaintiff complains the "temporary policy" concerning obtaining medical records via "Olson review" amounted to a denial of access to the courts. (*Id*. at 36.) Plaintiff states he needs his "medical records urgently, immediately, critically, promptly" in order to determine "the exact date" he was transferred "from (HDSP) and the names of all medical staff that were involved into making this recommendation that include the chief medical warden at that time." (*Id*. at 36, 38.)

The Court has reviewed the grievances and agrees with Defendant that none contain allegations regarding Defendant Arce. (Doc. 48-3 [UDF] at Fact ¶¶ 13-21; Doc. 48-6 [Martin Decl.] at ¶¶ 8-11; Doc. 48-7 [Martin Exhibits].)

Therefore, the burden shifts to Plaintiff to present "evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1166. Plaintiff has not done so.

Plaintiff essentially argues that Defendant's contentions that he failed to exhaust his administrative remedies lack merit because "there is no requirement that a notice of claim contain every legal theory upon which a cause of action is based," and that his complaint contained "a short and concise statement of facts which is intended to give the municipal defendant actual notice." (Doc. 51 at 2.) Plaintiff appears to be confusing the PLRA exhaustion requirement with pleading standards and legal theories. In any event, because Plaintiff is required to exhaust his administrative remedies prior to filing suit, he was required to comply with the CDCR's regulations in that regard. *See Eaton*, 50 F.4th at 1244. The regulations do in fact require Plaintiff

1    to specifically identify the individual or individuals involved, along with the specific facts, when

2    filing a grievance:

> The inmate or parolee shall list all staff member(s) involved and shall
> describe their involvement in the issue. To assist in the identification
> of staff members, the inmate or parolee shall include the staff
> member's last name, first initial, title or position, if known, and the
> dates of the staff member's involvement in the issue under appeal. If
> the inmate or parolee does not have the requested identifying
> information about the staff member(s), he or she shall provide any
> other available information that would assist the appeals coordinator
> in making a reasonable attempt to identify the staff member(s) in
> question.

9    Cal. Code Regs. tit. 15, § 3084.2(a)(3).[2] Yet Plaintiff submitted no grievance, non-medical or

10   medical, that named Defendant Arce or specifically described Defendant Arce's alleged

11   wrongdoing. To the extent any of those grievances reference the "CDC," a "doctor" or "doctors"

12   or "medical staff," those references are insufficient to give notice. As a result, Plaintiff failed to

13   properly exhaust his administrative remedies prior to filing suit. Plaintiff's medical grievances did

14   not put the prison on notice that the wrong that Plaintiff sought to address was Defendant Arce's

15   transfer of Plaintiff from A-Yard to D-Yard. As such, the grievances are insufficient to exhaust

16   his claim. *Sapp*, 623 F.3d at 824; *see also Woodford*, 548 U.S. at 90-91; *Estrada v. California

17   Corr. Inst.*, No. 1:18-cv-00599-AWI-SAB (PC), 2021 WL 3268555, at *8 (E.D. Cal. July 30,

18   2021) adopted by 2021 WL 4123686 (E.D. Cal. Sept. 9, 2021) (finding the plaintiff failed to

19   properly exhaust his administrative remedies because he did not name the defendant or

20   specifically describe his alleged wrongdoing as required by CDCR's regulations).

21       To the extent Plaintiff intended his disputed fact number 8—that in August 2017 Plaintiff

22   "was indigent, not capable of retaining counsel," assisted by an "'unknown prisoner,'" was

23   "incoherent," and "suffering from life threatening injuries from contracting valley fever"—as

24   evidence of unavailability, it does not do so. Plaintiff's indigency and the assistance of another

25   inmate do not excuse Plaintiff's failure to name Defendant Arce specifically in any grievance.

26   Notably too, Plaintiff has not established his illness caused incoherency or suffering to the degree

27   _____

28   [2] Effective June 1, 2020, the new rules are set out in Cal. Code Regs. tit. 15, §§ 3480–3486. For purposes
of these Findings and Recommendations, all citations refer to the version of the regulations which were
effective at the time relevant to Plaintiff's claim.

1    any administrative remedy was unavailable to him.

2        As above, Plaintiff has not established the CDCR's grievance system "operates as a

3    simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved

4    inmates," or that it is "so opaque that it becomes, practically speaking, incapable of use," nor has

5    he established that CDCR administrators "thwart inmates from taking advantage of a grievance

6    process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643-44. Nor

7    does Plaintiff assert or produce evidence that he was unaware of the prison's administrative

8    grievance procedure, or that any prison official erred in the interpretation of any regulation in

9    deciding the administrative appeals or threatened retaliation. *See Nunez*, 591 F.3d at 1226; *Sapp*,

10   623 F.3d at 823; *Albino*, 747 F.3d at 1177; *McBride*, 807 F.3d at 987.

11       Further, for the reasons discussed above, Plaintiff's reading score does not make CDCR's

12   administrative remedies unavailable to him.

13       Viewing the evidence in a light most favorable to Plaintiff and resolving all doubt in his

14   favor, the Court finds that Plaintiff filed the operative complaint prior to exhausting his

15   administrative remedies. Therefore, the complaint is subject to dismissal without prejudice. *See*

16   *Jones*, 549 U.S. at 223–24; *Lira*, 427 F.3d at 1175-76.

17       **VI.    CONCLUSION AND RECOMMENDATION**

18       Accordingly, **IT IS HEREBY RECOMMENDED** that:

19       1.  Defendant's Motion for Summary Judgment Re: Exhaustion (Doc. 48) be GRANTED;

20       2.  Plaintiff's complaint be DISMISSED without prejudice;

21       3.  Plaintiff's pending motions to compel (Docs. 54 & 55) be DENIED as moot in light of

22           these findings; and

23       4.  This action be closed.

24       These Findings and Recommendations will be submitted to the district judge assigned to

25   this case, pursuant to 28 U.S.C. § 636(b)(l). **Within 14 days** of the date of service of these

26   Findings and Recommendations, a party may file written objections with the Court. The

27   document should be captioned, "Objections to Magistrate Judge's Findings and

28   Recommendations." Failure to file objections within the specified time may result in waiver of

rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **December 12, 2022**          _____
                                       UNITED STATES MAGISTRATE JUDGE